The next case on for argument is United States v. Torres. Good morning. May it please the court. Yan Chun-Li, Federal Defenders for Appellant Nathan Torres. The district court erred in concluding that New York assault categorically qualified as a crime of violence under the force clause. To so qualify, New York assault must require in every instance the use of physical force, which means the active employment of physical force. Didn't the district court say explicitly that it would have given the same sentence regardless? Your Honor, I would say that the record is not entirely clear on this point. Given that this is a, so let's take a step back, this is a preserved error. And so for a preserved error on a finding of harmlessness, the government bears the burden. That's, so they have the burden. And the standard that this court has set in Jass and Feldman is that the record has to sort of unambiguously indicate the district judge would have imposed the same sentence. And, Your Honor, you're absolutely correct that there were parts in the record where the judge said, I would impose the same sentence. But Why doesn't that unambiguously show that the court would have imposed the same sentence? Because there were other statements in the record that the court indicated some uncertainty about it. There were several parts at page 107 of the appendix, as well as at page 120 of the appendix. 107 and 120? 120, yeah. Where the court said, I don't think that this is going to make much of a difference. And so I think both of those statements, I don't think, and I don't think there's much of a difference. Don't you have a little bit of a stronger argument? And that is that with the enhancement, the range was 27 to 33 months, and he got 33 months. Without the enhancement, the range is 12 to 18 months, and he got 30 months. That's And so he was in the middle of the first range, but considerably above the lower range. That's exactly right, Your Honor. And so that's the second argument as to harmlessness is that, and this Court has said this, that in Feldman, as well as in a case called Binday, B-I-N-D-A-Y from 2015, that the Court is especially wary of finding harmlessness when the correct range would have been cut in half, which is exactly what happened here. So we go from 27 to 33 to 12 to 18. And then, additionally, to follow up on exactly the same point that Your Honor is pointing out, is that a 30-month sentence on a 12 to 18 range is a unicorn in the Southern District. This is, you know, there's 1 percent of cases in the Southern District in which there's an upward variance from the range. And this is a 200 percent increase from the median point of what we would think is the correct range. And in a case in which the district judge actually found mitigating circumstances about this defendant. And so it's really hard to believe that a judge would have gone 200 percent above the range if the correct range were really 12 to 18. And so on both of those. Okay. Now, leaving that side, your main argument here is that this is a crime that, under New York law, could have been committed by omission. Yes, Your Honor. Right? But when you look at the specific statute that's involved here, the defendant is going on to a school ground and then conducting an assault. Now, you tell me how a person is going to enter a school ground and conduct an assault by omission. Yes, Your Honor. So I think it takes very little. I'm not a particularly imaginative person. I can easily see this. So in Wong and The law says pure imagination doesn't count. Exactly right. So that's exactly right. You're about to give me pure imagination. I'm going to give you a very simple alteration. So in Wong and Steinberg, which are the two big New York Court of Appeals cases, it happened in an apartment, there was an injured child, and then a parent who owes a duty of care to the child does nothing, doesn't seek medical care, and that's enough for assault, essentially, or manslaughter, which is the greater included offense. And so if you take those two cases and just alter two minor facts, you have exactly what's happened here, which is instead of taking place in an apartment, it takes place on a playground in a schoolyard, and then the child happens to be a student at the school. That's it. You're guilty of 120.0510B. And I would add that those two minor alterations do not go to the use or the omission question here. They don't touch that element of it. And so it converts simple assault into this kind of assault, but they don't go to the omission issue. You're saying a parent could be negligent and not do anything if their child was injured in a schoolyard and they were there? Is that your argument? No, the argument is, let's say that your child is on the monkey bars and the child falls, and the parent, or it could be a paid child care worker as well, sees the child injured and knows that the child needs medical attention, but intending to harm to the child literally does nothing, and then the child suffers greater injury, that person is guilty of this assault. Well, I mean, it seems to me there are plenty of circumstances that are not so difficult to, that they wouldn't be frequent, but somebody who has a duty to protect the child and maliciously sees the child approaching a dangerous circumstance that the person knows the child can't handle, deliberately does nothing with the intention of causing injury to the child, that's... That's correct as well. Fortunately, that's not everyday conduct, but it's malicious. I don't see why it shouldn't qualify. Yes, Your Honor. If you see a blind person, and you are a person who is charged with the duty of caring for that, and protecting that person from injury, you see a blind person approaching a staircase not knowing it's there, and you deliberately don't warn, so to increase the risk that the blind person will fall, I don't see why that doesn't qualify. That's exactly right, Your Honor. And, you know, the government relies on Castleman to say that the Supreme Court has taken care of this, and that's not correct. Castleman never addresses this exact situation that you pointed out, Your Honor, which is where the defendant is guilty literally by doing nothing. There's no act at all, not even the sprinkling of the poison, which is always... Well, it's no physical action, but it's an intentional withholding of doing something that someone has an obligation to do, and an intentional withholding of it with the intention of causing injury. Absolutely. And it's a proper... That's not just passivity. That is intentional control of one's conduct for a purpose of causing a harm. Yes, Your Honor. And it doesn't qualify, because you can commit assault that way. It just doesn't qualify categorically as the use of physical force, which under any ordinary, in ordinary law, is almost active employment. And the Supreme Court has said so much in LeoCow interpreting 16A, which is almost materially indistinguishable from this context, that use of force is active employment of force. Intentionally withholding a terrible act, a bad act, deservedly to be punished by New York, is still not a use of force. Even if, essentially, you are intending a third entity, a train, a car, a bicycle, to inflict the injury, and obviously that is a use of force, not one's own, that doesn't qualify. It still doesn't qualify. Usually, these examples get... People with better imaginations than me have conjured up these kinds of examples where you deceive someone. So there's the example, in your example, Judge Lobos, there's an act of deception. So let's say you deceive a blind person to say, oh, take a few more steps, it's okay, where there is a big drop. So I think that there is a use of the force of the fall, because you've taken some action to cause that eventual result. And that's what Castleman is about, really. It's the sprinkling... My question was to suggest that it is use of... That it does qualify as use of force. This is... Okay. ...withhold a care or a caution that one is under a legal compulsion to give with the intention of causing harm. I don't see why that doesn't qualify. Okay, Your Honor. I'm sorry. I misunderstood you then. Yes. I think that there would be a very odd use... The term use here, as I explained in the brief and as I pointed out in Leo Cow, is this idea that the defendant has actively employed someone, has done something. And omission is really, by definition, inaction. It's not using... Right. I understand that. That would be true if you just had a straight statute that was in effect. Particular attention to the particular section here, which is 120.05 sub 10 sub B, where it says, and it requires an interpretation of this particular section, acting at a place the person knows or reasonably should know is on school grounds and with intent to cause physical injury. He or she causes physical injury to another. It doesn't say at a place the person knows. It says acting at a place. Yes, Your Honor. So you're saying that just sitting there and deliberately omitting information or warnings and that kind of thing is covered by this acting? Yes, Your Honor. So acting is defined in New York law at 15.00 sub section 5 as to act or to omit to act. And then omit, so omission is the grabment of our argument. So even when New York law says acting, they mean to act in the ordinary sense or to not act, where there is a duty to act imposed by law. So that's the first point about that. And the second point is that even if you took that word acting not in such a technical way in that the person has to physically do something, the acting is not related to the use of force. It's not necessarily related. It's just acting in the school grounds. So I think for both those reasons, that component of the definition doesn't take care of it. And again, as to this idea of So your second definition reads the word acting out of it. I mean, you're just saying just being there would cover it. No, no. So maybe acting means you do something. You literally make some bodily gesture, but that bodily gesture is not related to the use of force, which it has to be to qualify under the force clause. And so I understand that this kind of argument is highly technical and I don't have a case to say this, but this court has repeatedly upheld, has ruled in almost identical context that under the categorical approach, for instance, criminal sale of marijuana in New York doesn't qualify because for it to qualify under, I think this is Hylton, which I sent in recently in a 28J letter about the reasonable probability point. But in Hylton, the federal law says that it's a misdemeanor to basically give away free up to 30 grams of marijuana. And then the New York statute criminalizes sale of anywhere above 25. But sale includes, is a broader definition, includes sort of transfers of any kind, including gift transfers. But of course, there's never been a case in which anybody's been prosecuted for giving between 25 and 30 grams of marijuana. But nonetheless, this court held, no, that doesn't qualify as a controlled substance offense in that context. This court also has held in Harbin v. Sessions, I think last year or the year before, that another New York controlled substance law doesn't qualify under the federal definition because it criminalizes one particular substance, something called HCG, human chorionic renatatropin, that's not listed in the federal schedule. Again, even though no one has ever been prosecuted in New York State for distributing HCG. And I think that our argument here is even stronger than that because New York law explicitly states that one can be guilty of assault by literally doing nothing by omission. Thank you, Mr. Lee. We've reserved two minutes for rebuttal. We'll hear from Ms. Grossman. May it please the court, my name is Jillian Grossman and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal. I'd like to begin by addressing the defendant's contention that it's possible to commit second degree assault in the state of New York by doing nothing. It is not possible. Where a affirmative act is imposed, the law transforms an omission into an action. And where there is a deliberate failure to perform a duty imposed by law, coupled with the specific intent and the result of inflicting physical injury, that involves the use of violent force under Castleman. Just to take an example, suppose there's a city employee who's assigned to a particular playground and there's a park, or a playground at a school, and there's a security officer at the school, and the security officer patrols around and all of a sudden goes into this playground, and a kid has a seizure, an epileptic seizure, and falls down, and bangs his head on the way falling down and hits his head. That's not so hard to imagine. And if this were true, that would not be covered? It would constitute second degree assault if two things were true. If that security officer had a duty to provide medical care, to intervene when a child is injured, and second, if the security officer omitted to perform that duty with the specific intent to injure the child, then that security officer would be intentionally availing himself of the physical force of the child's injuries, of the seizure, of the concussion, to inflict physical injury on the child. He would be using the violent force. So you're saying as long as there's an injury, there's a force that has to be accompanied, has to accompany it? Yes. And you get away from whatever the officer does, whether it's active or by omission. That's sufficient? Not necessarily, Your Honor. What the officer does matters. If the officer has a duty to intervene and they deliberately neglect to perform that duty, neglect is the wrong word because it has to be intentional. If they deliberately fail to perform that duty for the purpose of inflicting injury on the child, then yes, they have used violent force in that situation. And the fact that the security officer didn't initiate the force, the fact that the force was initiated by a seizure, doesn't mean that the security officer didn't intentionally avail himself of violent force to injure the child. Your argument is that the hypothetical examples given by your adversary can't occur because you need this additional mental element with it? That's true, Your Honor. In order to use violent force under Castleman and 2010 Johnson, there The government's position is that when Mr. Torres represents that it's possible to commit assault by doing nothing, that's a red herring because deliberately failing to perform a duty imposed by law is not doing nothing. That is an affirmative act. Especially when it's deliberately doing nothing with the intention to cause injury. Precisely, Your Honor. We would not say that a parent who actively starves their child has simply done nothing. They have availed themselves of the violent physical force of starvation to inflict devastating physical injuries on a child's body. Taking a step back to an issue I haven't addressed... So, sorry, look, just before you step back, and I'm happy to let you do that, but just so I'm clear, so in order to convict a person of assault under the statute in question here, then there always needs to be demonstrated that mental element which then takes it out of not doing anything. Exactly, Your Honor. The statute requires intentional causation of bodily injury, and in order for an omission to be culpable, the reason that New York law criminalizes omissions the same way it does other voluntary acts is because an omission requires a deliberate failure to perform a duty imposed by law, and when that's coupled with a specific intent Your Honor mentioned, it constitutes second degree assault. This court, however, need not reach the guidelines question in this case, because the district court made absolutely clear on the record below that it was imposing the sentence it chose based on factors completely independent of the guidelines. So what do we do with the issues that came up in the discussion between Mr. Lee and Judge Walker? Your Honor, I think this court can take the district court at its word when it says it was fully aware of what the lower guidelines range might be. It was aware that were the defendant correct in his contentions about the guidelines, the applicable range would be 12 to 18 months, but the district court stated in no uncertain terms that it did not think a sentence of less than two and a half years would be appropriate, and it What do you do with Feldman, where we said that a district court should not try to answer the hypothetical question of whether or not it definitely would impose the sentence, the same sentence, and we instructed district courts to consider the facts and circumstances of the case before us, and you have a situation where this is a sentence, if the lower guideline range is to be imposed, that effectively adds whatever it is, 65, 66% to the guideline range, which is pretty rare in the Southern District. Your Honor, although the court in Feldman instructed district courts not to try to answer the question of what impact a disputed guidelines issue might have on their sentence, district courts can still explain the reasons for choosing a specific sentence, and they can, of course, choose to impose a sentence outside of the applicable advisory guidelines range. In Molina-Martinez, the Supreme Court stated that when a district court explains its reasons for imposing a specific sentence, reviewing courts can look to that explanation of reasons to determine whether the district court relied on independent factors in its harmless error analysis, and in this case, that's exactly what the district court did. It explained that based on Mr. Torres' criminal history and the offense conducted issue, normally it wouldn't impose less than a three-year sentence, but here, because of Mr. Torres' work history, because of his role as a father, because of his statements to the court, the district court concluded that a little less two and a half years was appropriate. Now, it did address the guidelines question, and it did say, and I'm quoting from page 146 of the appendix, this sentence I'm about to impose is the same regardless of what the guidelines calculation is. I think defense counsel has done a good job articulating a legal theory as to why the lower guideline might apply. Even if she is right, it's not going to alter my determination as to what is the appropriate sentence here, and that then segued into his explanation of all the reasons why he thought a two and a half year sentence was appropriate. Based on that record, the district court made absolutely clear that the guidelines question had no impact whatsoever on his sentence, and there's no question that even if he relied on an incorrect guidelines range, any error was demonstrably harmless. Your adversary counsel cited instances in which the district court said things that were more equivocal and tentative and searching. What was the sequence? Do I understand correctly that the passage you quoted was when the district court came to its conclusion and decided what sentence it would impose? That is correct, Your Honor. You would argue that that statement supersedes the other, that while the district court may have been undecided during the course of the proceeding in hearing different arguments, when the court came out and imposed the sentence, it said, I would impose this sentence regardless and explain why. Yes, absolutely, Your Honor. The district court was very clear when it came time to actually impose sentence that the guidelines question had no impact on the sentence he was imposing. The statement cited by defense counsel were made toward the start of the sentencing proceeding right before and after he heard argument on the guidelines question. And read in context, it's clear the district court was simply communicating that although he was obligated to calculate the defendant's guidelines range, he didn't expect it to have an impact on the sentence. Once he had heard the party's arguments and considered all the 3553A factors which were discussed at length in the sentencing proceeding, he made a wholly unequivocal statement that he was basing his sentence on those independent factors. Okay. Thank you. Thank you, Your Honor. Mr. Lee. First, a brief point about the merits and then to the harmlessness issue. The government's response to Your Honor's hypothetical I think makes the point for us, which is that based on all your descriptions, you said the only two things in addition that has to happen for this defendant to be guilty of assault is that there has to be a duty imposed by law to act and then a specific intent to cause injury. And neither of those things is an act. You know, the duty is imposed by New York law from elsewhere, right? And the intent is literally, you know, mens rea, right? It's in your head. You can have the intent without doing anything. The point I think that the government was making in this was that thinking about not acting essentially created or adopted or, to use a horrible word, actified, you can use it after this, but created an act that then satisfies the statute. I understand, Your Honor. You have to really just twist this word around to get to this result, respectfully. It's use. Use of physical force, it means active employment. And you know, a person who, you know, a parent who does, literally does nothing and watches a child starve has not used physical force. And I understand, it's obviously a terrible act and deserves to be punished, but that person has not used physical force, which is the question here. Well, how did the person use the physical force in Castleman by just sprinkling some poison? The force was when the poison took effect. That's right. Afterwards. Well, if the seizure situation and the person hits their head, there's some action going  There's some force involved. That's right. The person falls down, hits their head, and starts bleeding. And that is force. Yes, Your Honor. But the difference is that the person has initiated an act, has done the sprinkling or the deceiving. The person has, by that act, has employed the ultimate, has started this chain, intentionally started this chain of events, which leads to the poisoning, you know, the poison affecting the body. And so this Court, I mean, I can't leave here without reminding the Court that this Court settled this question in Cherzanowski in 2003. The problem with Cherzanowski is that Cherzanowski allowed, said that it was a Connecticut statute, intentionally causing physical injury exactly the same as here, absent the school and student qualifiers. And the Court said that that's not use of physical force because a doctor who withholds medicine has not used physical force. But it also said, I think an example, it also gave a sprinkling of poison example. And so after Castleman, you know, we didn't, we're not making that sprinkling argument anymore because I think that that's taken care of by Castleman. But Castleman doesn't touch the withholding of medicine or the omission argument. And so I think that this Court has already settled this. But as to the harmlessness, Your Honor, you know, I think this is a situation where ties goes to the runner, ties go to the defendant, not only because the defendant, the government bears the burden, but also because, you know, this Court has said numerous times that a And, you know, even if it's just like a week that could have made a difference in the district court's estimation of the appropriate sentence, that's a significant time for the person who has to serve that time. And given that what the Supreme Court has said that even under the advisory guidelines, you know, the guideline range has a, the word that Pew used was anchoring effect. It has a gravitational effect on the ultimate sentence. And starting from one place really, really does determine ultimately where the court ends up. And so for all those reasons, I ask the court to vacate and remand for resentencing. Thank you. Thank you, Mr. Lee. Thank you, Ms. Grossman. Well argued and much appreciated. We'll reserve decision.